2016 IL App (1st) 141595

SIXTH DIVISION
January 29, 2016

No. 1-14-1595

| | | |
|---|---|---|
| TRAVELERS PERSONAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | 13 CH 04169 |
| MICHAEL EDWARDS and MELISSA MIZEL, | ) ) ) | Honorable David B. Atkins, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendants Michael Edwards and Melissa Mizel appeal from the circuit court's

determination on summary judgment that their home insurer, Travelers Personal Insurance

Company (Travelers), had no duty to defend or indemnify them in an underlying lawsuit filed by

their neighbor, Ann Catherine McGoey.  The circuit court granted summary judgment in favor of

Travelers, holding, *inter alia*, that since McGoey's underlying lawsuit for injunctive and

declaratory relief made no request for monetary damages, the underlying action therefore failed

to trigger liability coverage under the terms of the policy.  Alternatively, the circuit court

concluded that summary judgment in favor of Travelers was appropriate because the allegations

in the underlying lawsuit could not reasonably be interpreted to refer to an accident and therefore

they failed to allege an "occurrence" within the terms of the policy which would have triggered a duty to defend.

¶ 2    For the reasons that follow, we affirm the judgment of the circuit court granting summary judgment in favor of Travelers on the alternative ground.

¶ 3                                    BACKGROUND

¶ 4    This appeal arises from an underlying dispute between neighboring property owners concerning McGoey's proposal to relocate a driveway easement that crosses over a portion of her property.  In 1940, the property owners of 929, 939, 935, and 941 Tower Road, Winnetka, Illinois, entered into a written agreement granting them a driveway easement over 935 and 941 Tower Road for purposes of ingress and egress to and from the properties. See *McGoey v. Brace*, 395 Ill. App. 3d 847, 848 (2009).  McGoey currently owns 941 Tower Road, one of the properties upon which the easement was granted.  Defendants Michael Edwards and Melissa Mizel currently own 939 Tower Road, one of the properties benefitted by the easement.

¶ 5    According to McGoey, the present location of the driveway easement contributes to poor storm-water drainage causing recurring flooding of her home.  McGoey "proposed to move the driveway at her own expense and to leave the existing driveway in place until the new driveway was complete." *Id*. at 849.  Defendants Michael Edwards and Melissa Mizel refused to consent to the relocation of the driveway easement.

¶ 6    In January 2006, McGoey filed a complaint against her neighbors, including defendants, asking the circuit court to issue a writ of *mandamus* permitting her to relocate the driveway easement.  The complaint made no request for monetary damages.

¶ 7    In August 2006, McGoey filed a first amended complaint against the same defendants.  The complaint contained a count for injunctive relief seeking to enjoin defendants from permitting water to drain from their properties onto hers, to enjoin them from refusing to permit her to relocate the driveway easement, and to prevent defendants from interfering with her use

and enjoyment of her property. The complaint also contained a count for declaratory relief, requesting the court to declare and adjudicate the rights and duties of the parties under the written easement agreement and declare that McGoey had the right to relocate the driveway easement. Both counts requested the court to grant costs incurred and any further relief the court deemed proper.

¶ 8    Betsy Brace, the owner of 939 Tower Road, filed a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)), which was granted by the circuit court. *McGoey*, 395 Ill. App. 3d at 849. On appeal, in an opinion filed on October 16, 2009, our court reversed the dismissal. *Id*. at 860. We found that the issue as to whether McGoey's proposal to relocate the driveway easement constituted such a "substantial" change in the nature of the easement that it required her neighbors' consent, was a factual issue that could not be resolved on a section 2-615 motion to dismiss. *Id*. at 859-60. As a result, we remanded the matter to the circuit court to determine if McGoey's proposal to relocate the driveway easement constituted a "substantial" change in the nature of the easement. *Id*.

¶ 9    In April 2010, McGoey filed a second amended complaint against the same defendants alleging factually similar allegations contained in her previous complaint. However, this time, the complaint contained a single count for declaratory relief, requesting the same relief she sought in her first amended complaint. McGoey also requested the court to grant costs incurred and any further relief the court deemed proper.

¶ 10    The circuit court held a pretrial settlement conference resulting in the court's order of April 19, 2011, which provided that the case had been settled by agreement of the parties and that counsel would memorialize the agreement in writing. The case was continued for status.

However, because of issues raised by defendants, on August 10, 2011, the circuit court set pretrial and trial dates.

¶ 11    On October 19, 2011, following a second pretrial settlement conference, the circuit court entered an agreed order striking the discovery and trial dates and continued the case for status requiring the parties to reduce their oral agreement to writing. Thereafter, defendants engaged in motion practice in an effort to alter the settlement agreement.

¶ 12    In July 2012, McGoey filed a motion for entry of final judgment pursuant to the settlement agreement or, in the alternative, for a petition for adjudication of indirect civil contempt against defendants. McGoey alleged, *inter alia*, that defendants had engaged in a pattern of "concocting new or conflicting terms after the fact, repudiating the settlement acknowledged by everyone else, and causing massive delay and attorneys' fees to the parties to this litigation." McGoey requested sanctions against defendants pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) for their alleged vexatious conduct in failing to comply with the circuit court's orders directing the parties to sign the settlement agreement.

¶ 13    On October 26, 2012, the circuit court granted the motion in part and enforced the settlement agreement, but denied that portion of the motion which sought sanctions against defendants. The defendants subsequently appealed from the part of the court's order enforcing the settlement agreement, while McGoey cross-appealed from the part of the order denying her request for sanctions.[1]

---

[1] On March 31, 2015, in an unpublished order under Illinois Supreme Court Rule 23 (eff. July 1, 2011), we affirmed the circuit court's order enforcing the settlement agreement. *McGoey v. Edwards*, 2015 IL App (1st) 123327-U. However, we determined the court did not abuse its discretion in denying McGoey's request for sanctions against defendants Michael Edwards and Melissa Mizel. *Id*. ¶ 48.

¶ 14    On February 11, 2013, Travelers filed a declaratory judgment action in the circuit court seeking a ruling that it had no duty to defend or indemnify defendants in the underlying lawsuit filed by McGoey and moved for summary judgment.

¶ 15    Travelers claimed defendants first notified it of the McGoey action on or about March 1, 2012. Defendants' policy with Travelers had an original effective date of August 5, 2004 and contained the following relevant provisions:

"COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury', 'personal injury' or 'property damage' caused by an 'occurrence' to which this coverage

applies, we will:

Pay up to our limit of liability for the damages for which the 'insured' is legally liable.***; and

Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent ***."

¶ 16    Defendants tendered their defense in the McGoey suit to Travelers. Travelers subsequently disclaimed coverage on the grounds that the allegations in the suit did not trigger its duties to defend under the terms of the policy because McGoey was not seeking damages due to "bodily injury," "personal injury," or "property damage."

¶ 17    On May 13, 2014, the circuit court entered a memorandum opinion and order granting Traveler's motion for summary judgment. The court granted summary judgment to Travelers primarily on the ground that McGoey's declaratory and injunctive action made no request for "damages" as defined in defendants' insurance policy with Travelers that would trigger liability

coverage under the terms of the policy. The court also determined that even if the declaratory suit sought damages, any damage to McGoey's property resulting from the recurring flooding was not an accidental "occurrence" as defined in the policy and that coverage was barred by the "expected or intended" exclusion.

¶ 18    Defendants now appeal from the circuit court's order granting summary judgment in favor of Travelers. Defendants confine their arguments to McGoey's first amended complaint which sought declaratory and injunctive relief.

¶ 19                                    ANALYSIS

¶ 20    Our review of the circuit court's order granting summary judgment is *de novo*. *Sears Roebuck & Co. v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171 (2003). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). A reviewing court may affirm a circuit court's grant of summary judgment on any basis supported by the record. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 163 (2004).

¶ 21    "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002). In construing an insurance policy, the court's primary function is to ascertain and enforce the intent of the parties as expressed in the agreement. *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 177 (2008). To ascertain the intent of the parties and

the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the words in the policy are unambiguous, the court will afford them their plain, ordinary meaning, and will apply them as written. *Id.*

¶ 22    In order to determine whether an insurer has a duty to defend the insured, a court must examine the allegations in the underlying complaint and compare them to the relevant provisions in the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107 (1992). If the allegations in the underlying complaint fall within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). An insured has the burden of proving that a claim falls within the coverage of the policy. *Addison Insurance Co. v. Fay*, 376 Ill. App. 3d 85, 88 (2007). Once the insured satisfies this burden, the insurer has the burden of proving that the loss was limited or excluded by a contract provision. *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 749 (2008).

¶ 23    The policy at issue provides coverage for those sums the insureds become legally obligated to pay as damages because of "property damage." Property damage is covered only if the damage is caused by an "occurrence." An "occurrence" is defined in the policy as "An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in *** 'property damage' during the policy period." Our courts have defined an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." (internal

quotation marks omitted.) *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 703 (1996). "The focus of the inquiry in determining whether an occurrence is an accident is whether the *injury* is expected or intended by the insured, not whether the acts were performed intentionally." (Emphasis in the original.) *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 409 (2004). "The natural and ordinary consequences of an act do not constitute an accident." *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619 (1980).

¶ 24    In her first amended complaint, McGoey alleged that the location and size of the driveway easement contributed to poor storm water drainage on her property, which in turn caused frequent and severe flooding of her home. The flooding caused rain water and raw sewage to intrude upon her downstairs bedroom, basement, and garage rendering her home intermittently uninhabitable. The flooding also fostered the growth of mold. See *McGoey*, 395 Ill. App. 3d at 849.

¶ 25    The circuit court determined that McGoey's allegations did not fall within the meaning of an accident or occurrence where the defendants had known of the flooding for at least 17 years and had "repeatedly refused to allow McGoey to do anything to ameliorate her situation." The court maintained that the recurring flood damage to McGoey's home did not result from an occurrence or accident covered by the policy because the flood damage was a natural and ordinary consequence of defendants' repeated refusal to allow McGoey to relocate the driveway easement.

¶ 26    Our analysis leads us to agree with the circuit court's conclusions. The recurring flood damage to McGoey's home as alleged in her first amended complaint, was a natural and ordinary consequence of defendants' conduct in repeatedly refusing to allow McGoey to relocate the driveway easement and was reasonably expected by the defendants and, accordingly, was not the

product of an accident. Since the flood damage was not the product of an accident, it could not be the result of an "occurrence."

¶ 27    We disagree with the defendants' contention that the circuit court erred in finding that the flood damage to McGoey's property should have been reasonably anticipated or expected by the defendants. McGoey's first amended complaint contained the following relevant allegations. McGoey "has suffered flooding in the living spaces of the home on the average of three times per year for the last seventeen years, involving rain water and raw sewage intruding into the downstairs bedroom, basement and garage, despite many efforts to ameliorate the problem. *** The elevation of Tower Road has compounded the then existing flooding problem to the point that [McGoey's] residence frequently becomes uninhabitable. Expert opinion confirms that movement of the driveway as shown in Exhibit C, in conjunction with and as part of a complete reworking of the drainage conditions on the property, will solve the flooding problem and prevent further damage to the building and its occupants. Despite being informed of [McGoey's] health and safety concerns, Defendants have consistently and continually refused to allow [McGoey] to move the driveway substantially as shown in Exhibit C and to rectify these serious and ongoing health and safety problems."

¶ 28    In light of these allegations, it is difficult to comprehend how the defendants could not have reasonably expected that the flooding of McGoey's property would continue unabated given their repeated refusals to allow her to move and relocate the driveway easement. Taking the allegations in the first amended complaint as true, it is reasonably logical to conclude that the recurring flood damage to McGoey's home was a natural and ordinary consequence of defendants' conduct in repeatedly refusing to allow McGoey to relocate the driveway easement and that the damage was reasonably expected by the defendants. As a result, we find that

Travelers had no duty to defend defendants in connection with McGoey's underlying lawsuit for injunctive and declaratory relief, and the circuit court properly granted summary judgment for Travelers.

¶ 29 Moreover, since we have determined that McGoey's claims do not fall within the coverage afforded by the policy, we must also conclude that the circuit court did not err in holding that Travelers had no separate duty to defend defendants against a motion for Rule 137 sanctions brought by McGoey for defendants' alleged vexatious conduct in failing to comply with the court's orders directing the parties to sign the settlement agreement. We agree with the circuit court's finding that absent a duty to defend the overarching action, there can be no breach of the insurance contract for failing to defend a motion arising out of that action. In addition, this issue is moot insofar that in an unpublished order filed on March 31, 2015, we held the circuit court did not abuse its discretion in denying McGoey's request for Rule 137 sanctions against defendants. See *McGoey v. Edwards*, 2015 IL App (1st) 123327-U, ¶ 48.

¶ 30 For the foregoing reasons, we affirm the circuit court's summary judgment in favor of Travelers holding that it had no duty to defend defendants in McGoey's underlying lawsuit for injunctive and declaratory relief. We also affirm the circuit court's holding that Travelers had no duty to defend defendants against a motion for Rule 137 sanctions brought by McGoey.

¶ 31 Affirmed.