THIRD DIVISION
December 5, 2007

No. 1-06-2908

| | | |
|---|---|---|
| STEPHEN GARLEY, Individually and as Special Adm'r of the Estate of Pauline Garley, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|     Plaintiff-Applicant, | ) ) | |
|     v. | ) | |
| COLUMBIA LaGRANGE HOSPITAL , SCOTT MULTACK and CARLA MITCHELL, | ) ) ) | |
|     Defendants-Respondents | ) ) | |
| (Advanced Health Care For Women, Ltd., Joan Cardone, Joseph Reda, and Western Springs Family Practice Center, | ) ) ) | Honorable |
|     Defendants). | ) ) | Donald J. O'Brien, Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

This interlocutory appeal arises out of a medical malpractice action filed by plaintiff, Stephen Garley, against defendants Columbia LaGrange Hospital (the Hospital), Scott Multack, D.O., and Carla Mitchell, M.D. [1] In April 1998, plaintiff's decedent Pauline Garley was a patient at the Hospital and underwent a series of abdominal surgeries on April 28, 1998. The surgery

---

[1] While Dr. Joan Cardone, Dr. Joseph Reda and two healthcare corporations were also named in plaintiff's suit, prior to trial, these parties were voluntarily dismissed as defendants.

was performed by Dr. Multack, who was assisted by Dr. Mitchell. The surgery was completed without incident and complications. After surgery, Dr. Multack ordered that Mrs. Garley be ambulated with assistance by a nurse. Ambulation is done after surgery to help decrease the risk of a patient developing a blood clot, or a deep vein thrombus (DVT). According to hospital records, there were attempts to ambulate Mrs. Garley, a few of which were unsuccessful. On April 30, 1998, Mrs. Garley collapsed and died during ambulation, with the cause of death being pulmonary embolus.

Plaintiff filed a wrongful death suit against the Hospital, based upon the conduct of its nursing staff in caring for Mrs. Garley both during and after surgery, and Dr. Multack and Dr. Mitchell, who were involved in Mrs. Garley's surgeries and postsurgical care. The case went to trial on January 2, 2002, and before the verdict was read, a settlement agreement was reached between plaintiff and Drs. Multack and Mitchell. The settlement was in the form of a "high-low" agreement. Dr. Multack's high was $1 million and his low was $950,000. Dr. Mitchell's high was $1 million and her low was $100,000. The settlement also contained a priority of execution agreement in which plaintiff agreed to collect any judgment, up to $10 million, against the Hospital before collecting anything from either doctor. The settlement agreement also contained another provision which provided that if an appeal was pursued by plaintiff or the Hospital from a verdict for or against the Hospital, and a new trial was granted, the settlement agreement would be void and any new trial would include Drs. Multack and Mitchell.

On February 7, 2002, the jury returned it's verdict, finding Dr. Multack and the Hospital liable for Mrs. Garley's death, but not Dr. Mitchell. The jury found that the damages were $2.8

million. The Hospital filed a motion for judgment *n.o.v.*, which the circuit court denied.

Plaintiff appealed from the judgment in favor of Dr. Mitchell and from the judgment against the Hospital and Dr. Multack, seeking a new trial on the issue of damages on the ground that the jury's verdict was inadequate. Dr. Multack and Dr. Mitchell filed motions to dismiss plaintiff's appeal, on the grounds that the terms of the settlement included an agreement that prevented the filing of an appeal. They argued that if a new trial on the issue of damages were granted, then the settlement terms would have to be vacated. On October 3, 2002, this court dismissed plaintiff's appeal. This court subsequently granted plaintiff's motion to voluntarily dismiss his appeal against the Hospital.

The Hospital also appealed, arguing that the circuit court erred in denying its motion for judgment *n.o.v.* because plaintiff's experts, who were physicians, were not competent to testify as to the applicable nursing standard of care. On June 30, 2004, this court issued its opinion in Garley v. Columbia LaGrange Memorial Hospital, 351 Ill. App. 3d 398 (2004) (Garley I), *appeal denied,* 212 Ill. 2d 531 (2004). In Garley I, this court held that pursuant to our supreme court's decision in Sullivan v. Edward Hospital, 209 Ill. 2d 100 (2004), plaintiff's physician experts were not competent to testify as to the standard of care for the Hospital's nursing staff. Accordingly, this court reversed and remanded the matter "for a new trial consistent with the views expressed herein." Garley I, 351 Ill. App. 3d at 413.

On remand to the circuit court, the parties submitted briefs addressing: (1) whether Drs. Multack and Mitchell remained parties; (2) whether collateral estoppel applied to preclude relitigation of damages; and (3) which parties had standing to address the issues.

1-06-2908

On June 25, 2005, plaintiff and Drs. Multack and Mitchell filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2004)), seeking to vacate the $2.8 million judgment in favor of plaintiff and against Dr. Multack, and in favor of Dr. Mitchell and against plaintiff. On August 8, 2005, the Hospital filed a response in opposition to the motion to vacate judgment, in which the Hospital argued that the motion to vacate judgment was untimely where it had not been filed within two years after the judgment. The Hospital also filed a motion which asserted that only the Hospital and plaintiff remained parties to the action and that Drs. Multack and Mitchell were no longer parties since they did not pursue an appeal from the judgment.

On August 19, 2005, the circuit court issued its memorandum opinion, in which it denied the section 2-1401 petition to vacate the $2.8 million judgment on the basis that the petition was untimely where it was filed 41 months after the judgment was entered. The circuit court also addressed the Hospital's motion and granted the Hospital's request to dismiss Drs. Multack and Mitchell under section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)). The circuit court determined that the Hospital did not act inconsistently with the prior judgment so as to invoke the doctrine of revestment and that the $2.8 million judgment in favor of plaintiff against Dr. Multack was final and not affected by this court's reversal of the judgment against the Hospital or the settlement agreement. The circuit court concluded that Drs. Multack and Mitchell were not proper parties to any further proceedings between plaintiff and the Hospital. The circuit court also found that plaintiff and the Hospital were collaterally estopped from relitigating the issue of damages.

-4-

1-06-2908

On September 29, 2006, the circuit court entered a written order finding that this case involved questions of law as to which there are substantial grounds for differences of opinion and that immediate appeal from its orders may materially advance the ultimate termination of this litigation. In its written order, the circuit court identified the following questions involved:

"1. Where only LaGrange pursued an appeal from a judgment on a jury verdict - in favor of plaintiff and against LaGrange and Dr. Multak [sic] and against plaintiff and in favor of Dr. Mitchell - does the original judgment against Dr. Multak [sic] and in favor of Dr. Mitchell remain final and binding on all parties, thus barring Drs. Mitchell and Multak [sic] from being parties in the retrial, where:

(a) The Appellate Court reversed on an evidentiary issue and ordered a new trial; and

(b) There was a high-low agreement between plaintiff, Drs. Mitchell and Multak, [sic] but not LaGrange, which stated that if LaGrange obtained a new trial, the high-low agreement was void and the doctors would be parties in the retrial?

2. Are the parties collaterally estopped from relitigating the issue of damages, which were set by the previous jury at $2.8 million, finding in favor of Dr. Mitchell and against Dr. Multak [sic] and LaGrange, when the judgment was reversed as to LaGrange and the case was remanded for a new trial based on an evidentiary error, and plaintiff's appeal on the issue of damages was dismissed by agreement, and the appeals of Drs. Mitchell and Multak [sic] were dismissed on October 3, 2002?"

Plaintiff filed an application for leave to appeal pursuant to Supreme Court Rule 306 (155 Ill. 2d R. 306), and we granted plaintiff's application.

After a remand, the circuit court is required to exercise its discretion within the bounds of the remand. Clemons v. Mechanical Devices Co., 202 Ill. 2d 344, 351 (2002). Whether it has done so is a question of law that this court reviews *de novo*. Clemons, 202 Ill. 2d at 351-52.

The Hospital contends that this court's reversal and remand only pertained to the Hospital because Drs. Multack and Mitchell were not parties to the appeal. The Hospital therefore argues that the original judgment remained intact as to Drs. Multack and Mitchell, and that the doctors are no longer parties in the retrial. We disagree.

In this case, plaintiff and Drs. Multack and Mitchell entered into a settlement agreement in which plaintiff agreed to collect any judgment, up to $10 million, against the Hospital before collecting anything from either doctor. The settlement agreement specifically provided that if an appeal was pursued by plaintiff or the Hospital from a verdict for or against the Hospital, and a new trial was granted, the settlement agreement would be void and any new trial would include Drs. Multack and Mitchell. Because these parties agreed that if this court reversed and remanded, the settlement would be void and the doctors would be parties in the retrial, the Hospital's argument that the doctors are not to be parties in the retrial is without merit.

The circuit court was bound to follow this court's mandate precisely, and when an appellate court's mandate is not specific, the circuit court must consult the context of the mandate to determine what further proceedings would comport with the opinion. Whirlpool Corp. v. Certain Underwriters at Lloyd's London, 295 Ill. App. 3d 828, 834 (1998). In Garley I, this court

-6-

stated, "we reverse and remand this matter for a new trial consistent with the views expressed herein." Garley I, 351 Ill. App. 3d at 413. Nowhere in its opinion did this court limit reversal of this matter to the Hospital alone. In the settlement agreement, the parties specifically agreed that a retrial would include Drs. Multack and Mitchell. Therefore, we conclude that the circuit court's August 19, 2005, memorandum opinion in which it dismissed the doctors was inconsistent with this court's mandate and the terms of the settlement agreement. "In Illinois, a reversal abrogates the decree and leaves the cause [of action] as it stood prior to its entry, restoring the parties to their original positions." In re Marriage of Lehr, 317 Ill. App. 3d 853, 859 (2000). This court's reversal placed plaintiff, the Hospital, and Drs. Multack and Mitchell back in the same position prior to the jury's verdict. Accordingly, we answer the first question in the negative.

The second certified question asks this court to consider whether the parties are collaterally estopped from relitigating the issue of damages at retrial. "Collateral estoppel 'is an equitable doctrine of judicial origin created to prevent relitigation of previously adjudicated claims and is founded in principles of judicial economy.' " Werderman v. Liberty Ventures, LLC, 368 Ill. App. 3d 78, 83 (2006), quoting Ballweg v. City of Springfield, 114 Ill. 2d 107, 113 (1986). The minimum requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Werderman, 368 Ill. App. 3d at 84. Finality, for purposes of collateral estoppel, requires that the potential for appellate review must have been exhausted. Werderman, 368 Ill. App. 3d at 84. The application of

1-06-2908

collateral estoppel is a question of law and, therefore, is reviewed *de novo*. <u>In re J'America B.</u>, 346 Ill. App. 3d 1034, 1041 (2004).

In this case, in <u>Garley I</u>, this court did not affirm the circuit court's judgment. Rather, we reversed the judgment and remanded the case for further proceedings. As such, the appellate court mandate directed the circuit court to conduct a retrial. Therefore, the judgment of the circuit court was not a final judgment on the merits for purposes of collateral estoppel. See <u>J'America B.</u>, 346 Ill. App. 3d at 1043. Consequently, we answer the second certified question in the negative.

The Hospital, nonetheless, cites our supreme court's decision in <u>Saichek v. Lupa</u>, 204 Ill. 2d 127 (2003), and this court's decisions in <u>Riley v. Unknown Owners of 304 North Oak Park Avenue Building</u>, 25 Ill. App. 3d 895 (1975), and <u>Bodam v. City of Chicago</u>, 241 Ill. App. 3d 937 (1993), in support of the Hospital's argument that the original judgment against Dr. Multack set the limit on damages that may be recovered against the Hospital at retrial to $2.8 million. We find the Hospital's reliance on these cases unconvincing.

In <u>Saichek</u>, our supreme court held that, with regard to compensatory damages, a plaintiff who sues two defendants for a single, indivisible set of injuries arising from concurrent but independent acts cannot prosecute a claim against one defendant after the plaintiff has received payment in full of a default judgment from the other defendant. <u>Saichek</u>, 204 Ill. 2d at 140. In <u>Bodam</u>, this court cited its prior decision in <u>Riley</u>, in stating that "it has long been held that where a plaintiff has been awarded damages in a lawsuit against one tortfeasor and then seeks to hold a second tortfeasor liable for the same injury in a subsequent action, the plaintiff is estopped by the

former adjudication from recovering an amount of damages greater than that awarded in the first suit." Bodam, 241 Ill. App. 3d at 941, citing Riley, 25 Ill. App. 3d at 898-99. Unlike these cases cited by the Hospital, in the present case, this court reversed the judgment and remanded the case for further proceedings. Since there is no final judgment in this case, the doctrine of collateral estoppel does not limit the issue of damages to the amount of the original judgment that was vacated by this court.

For the above-stated reasons, we answer both certified questions in the negative, vacate the circuit court's August 19, 2005, order, and remand for further proceedings.

Certified questions answered and cause remanded.

GREIMAN and CUNNINGHAM, JJ., concur.